UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Kelley L. Hendrickson, | Case No. 18-cv-0086 (WMW/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Fifth Third Bank and 11th Hour Recovery, Inc., | |
| Defendants. | |
| | |
| Elizabeth A. Sampson and Tracey A. Lane, | Case No. 18-cv-1622 (WMW/TNL) |
| Plaintiffs, | |
| v. | |
| Fifth Third Bank, | |
| Defendant. | |

Before the Court are three dispositive motions in two related cases: *Hendrickson v. Fifth Third Bank et al.*, Case No. 18-cv-0086 (the Hendrickson case), and *Sampson et al. v. Fifth Third Bank*, Case No. 18-cv-1622 (the Sampson case). In the first motion, Defendant Fifth Third Bank (Fifth Third) seeks judgment on the pleadings in the Hendrickson case. In the second motion, Defendant 11th Hour Recovery, Inc. (11th Hour), seeks judgment on the pleadings or, alternatively, summary judgment in the Hendrickson case. In the third motion, Defendant Fifth Third seeks dismissal of the Sampson case. For the reasons addressed below, the Court denies both Fifth Third's and 11th Hour's motions

in the Hendrickson case, and grants Fifth Third's motion to dismiss the Sampson case.

## BACKGROUND

### I. Hendrickson Complaint

Plaintiff Kelley L. Hendrickson financed the purchase of a vehicle with a loan from Fifth Third in August 2016. Fifth Third retained a security interest in the vehicle. The loan agreement between Fifth Third and Hendrickson required Hendrickson to make monthly payments on the loan. In the event of default, the loan agreement specified that Fifth Third may repossess the vehicle.

After a change in her financial circumstances, Hendrickson initiated discussions with Fifth Third about payment plans. Fifth Third agreed to refrain from repossessing Hendrickson's vehicle as long as she continued making payments. During the months of June 2017 through October 2017, Hendrickson made five late payments on the loan. Fifth Third accepted each late payment, but later refunded the October payment.

In October 2017, Fifth Third secured 11th Hour to repossess Hendrickson's vehicle. Before the repossession, neither Fifth Third nor 11th Hour sent Hendrickson a notice advising her that Fifth Third intended to strictly enforce the terms of the loan agreement after accepting the late payments.

### II. Sampson Complaint

Plaintiff Elizabeth A. Sampson financed the purchase of a vehicle with a loan from Fifth Third in August 2014. Sampson's mother, Plaintiff Tracey A. Lane, co-signed the loan. Fifth Third retained a security interest in the vehicle. The loan agreement between Fifth Third and Sampson required Sampson to make monthly payments on the loan and

specified several remedies in the event of Sampson's default on the agreement. Those remedies included Fifth Third's right to "immediately take possession" of the vehicle.

From February 2015 through June 2017, Sampson made at least nine late payments on the loan. Fifth Third repeatedly accepted these late payments. Fifth Third repossessed Sampson's vehicle on July 6, 2017. Prior to doing so, Fifth Third did not send Sampson a notice advising her of Fifth Third's intent to strictly enforce the terms of the loan agreement.

Sampson filed for Chapter 7 bankruptcy protection on March 2, 2017, and she obtained a bankruptcy discharge on May 31, 2017. The parties agree that Sampson did not reaffirm her debt with Fifth Third.

## ANALYSIS

The same legal standard applies to both a motion to dismiss and a motion for judgment on the pleadings. *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Judgment on the pleadings or dismissal is appropriate when the plaintiff fails to plead facts sufficient "to state a claim to relief that is plausible on its face." *NanoMech, Inc. v. Suresh*, 777 F.3d 1020, 1023 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As to either motion, a district court may consider only the pleadings and "materials that are necessarily embraced by the pleadings." *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).[1]

---

[1] 11th Hour frames its motion as a motion for judgment on the pleadings "or, in the alternative, for summary judgment." Summary judgment typically is proper only after the

3

Hendrickson and Sampson (collectively, Plaintiffs) assert multiple claims against Defendants founded on the allegation that Fifth Third failed to send them a "*Cobb* notice" before repossessing their vehicles. *See Cobb v. Midwest Recovery Bureau Co.*, 295 N.W.2d 232, 237 (Minn. 1980) (holding that, if a creditor repeatedly accepts late payments, the creditor is required to give the debtor written notice of the creditor's intent to strictly enforce the terms of the loan agreement before repossessing collateral). Fifth Third and 11th Hour move for judgment on the pleadings, Fed. R. Civ. P. 12(c), against Hendrickson, and Fifth Third moves to dismiss the Sampson case for failure to state a claim, Fed. R. Civ. P. 12(b)(6), arguing that, as both actions are "action[s] on a credit agreement," they are barred by Minn. Stat. § 513.33, subd. 2. As all three motions before the Court involve the *Cobb*-notice issue, the Court begins its analysis with that issue. A ruling on 11th Hour's motion for judgment on the pleadings in the Hendrickson case and any remaining ground for Fifth Third's motion to dismiss in the Sampson case will follow.

## I. *Cobb*-Notice Issue

Minnesota's Uniform Commercial Code (UCC) governs a creditor's repossession of collateral. *See Cobb*, 295 N.W.2d at 237. After a default, a secured party may repossess collateral "without judicial process, if the secured party proceeds without breach of the peace." Minn. Stat. § 336.9-609(b)(2). This type of "self-help repossession" may not occur, however, without providing the debtor notice of the intent to repossess. *Buzzell v.*

---

nonmoving party has had an adequate opportunity for discovery. *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014). Here, because discovery is not complete, the Court construes 11th Hour's motion as one for judgment on the pleadings.

4

*Citizens Auto. Fin., Inc.*, 802 F. Supp. 2d 1014, 1021 (D. Minn. 2011) (citing *Cobb*, 295 N.W.2d at 237). This notice may be provided in the terms of the security agreement or in a strict compliance letter (a *Cobb* notice). *Id.*

In *Cobb*, the Minnesota Supreme Court held that, if a creditor has a contractual right to repossess collateral but repeatedly has accepted late payments, the creditor must "notify the debtor that strict compliance with the contract terms will be required before the creditor can lawfully repossess the collateral." 295 N.W.2d at 237. Here, both Plaintiffs gave Fifth Third the right to repossess their vehicles in the event of a default. And no party disputes that Fifth Third repeatedly accepted late payments and did not send a *Cobb* notice to Plaintiffs before repossessing their respective vehicles. Fifth Third nonetheless argues that Plaintiffs' claims are barred by Minn. Stat. § 513.33, subd. 2, which requires certain "credit agreements" to be in writing. Section 513.33 defines a "credit agreement" as "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." *Id.*, subd. 1(1). Under the statute, "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." *Id.*, subd. 2.

A plaintiff cannot assert claims rooted in promissory estoppel to avoid the statutory requirement that a credit agreement must be in writing. *Figgins v. Wilcox*, 879 N.W.2d 653, 659 (Minn. 2016). In *Figgins*, the court held that a creditor's assurance that it would not take action on the debtor's failure to timely repay a loan was "an agreement to 'forbear the repayment of money'" and a "financial accommodation" within the meaning of Section

5

513.33. *Id.* at 658 (quoting Minn. Stat. § 513.33, subd. 1(1)). As such, it was required to be in writing to be enforceable. *Id.* The debtor argued that his promissory estoppel claim should survive. *Id.* But promissory estoppel is not an exception to Section 513.33, the court concluded, because allowing claims for promissory estoppel would "substantially undermine" the statutory purpose of "prevent[ing] litigation based on oral promises allegedly made by bankers to their customers." *Id.* at 659 (citing *Rural Am. Bank of Greenwald v. Herickhoff*, 485 N.W.2d 702, 705 (Minn. 1992)).

Fifth Third argues that *Cobb* actions, such as Plaintiffs' here, are essentially promissory estoppel claims on credit agreements and, therefore, they are barred by Section 513.33. Because the Minnesota Supreme Court has expressly rejected promissory estoppel claims under these circumstances, Fifth Third argues, "*Cobb*'s underlying theory is no longer viable in Minnesota" unless a bank's repeated acceptance of late payments is pursuant to a written agreement that complies with Section 513.33's other requirements.

Fifth Third's reasoning does not follow from *Cobb* or the text of Section 513.33. To bar *Cobb* actions, Section 513.33 first must *apply* to such actions. There is no basis to conclude that a claim arising out of a creditor's failure to send a *Cobb* notice is an "action *on* a credit agreement." Minn. Stat. § 513.33, subd. 2 (emphasis added). Plaintiffs are not seeking to enforce the terms of a forbearance agreement between themselves and Fifth Third. Rather, Plaintiffs' claims are that Fifth Third failed to comply with an affirmative duty imposed by *Cobb*, which, in turn, precludes Fifth Third from lawfully repossessing Plaintiffs' vehicles.

That Fifth Third did not comply with *Cobb*'s requirement to send a notice to

6

Plaintiffs before repossessing their vehicles is undisputed, and *Cobb* does not conflict with Section 513.33. For this reason, Defendants' motions are denied insofar as each motion relies on this ground.

## II. 11th Hour's Motion for Judgment on the Pleadings

Hendrickson's complaint asserts two claims against 11th Hour—one for wrongful repossession under the Minnesota UCC, Minn. Stat. § 336.9-906, and one for violating the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692f(6). Hendrickson's claims against 11th Hour are premised on the allegation that, because Fifth Third failed to send Hendrickson a *Cobb* notice before repossessing her vehicle, 11th Hour's repossession was unlawful under the Minnesota UCC. The FDCPA prohibits repossession if "there is no present right to possession of the property claimed as collateral through an enforceable security interest." 15 U.S.C. § 1692f(6). Whether a repossession agent has a present right to possess property claimed as collateral depends on state law. *See Buzzell*, 802 F. Supp. 2d at 1021. Because the repossession of Hendrickson's vehicle was unlawful under the Minnesota UCC, Hendrickson asserts, 11th Hour also is liable under the FDCPA.

11th Hour moves for judgment on the pleadings. Hendrickson fails to state claims against it, 11th Hour argues, because 11th Hour is not a "secured party" within the meaning of the Minnesota UCC. 11th Hour cites two District of Minnesota cases to support this argument, *Shelley v. Wells Fargo*, No. 97-1837, 1998 U.S. Dist. LEXIS 22580 (D. Minn. July 2, 1998), and *Saice v. MidAmerica Bank*, No. 98-2396, 1999 WL 33911356 (D. Minn. Sept. 30, 1999), each holding that the Minnesota UCC did not apply to unsecured parties such as repossession agents. But, as Hendrickson correctly observes, recent cases in this

7

District have expressly rejected the rationale underlying *Shelley* and *Saice*, and these recent decisions have "require[d] those performing repossession on behalf of secured parties to comply with the standards set forth in" the Minnesota UCC. *Nelson v. BMW Fin. Serv. NA, LLC*, No. 15-2661, 2015 WL 8328073, *3 (D. Minn. Dec. 8, 2015) (citing cases). These decisions have concluded that holding repossession agents to these requirements is "appropriate because self-help repossession is a harsh remedy and strict application of the law is necessary to prevent abuse and to discourage illegal conduct." *Id.* (internal quotation marks omitted). Likewise, "[c]ourts in this district have plainly held that § 1692f(6) of the FDCPA *does* apply to repossession companies." *Buzzell*, 802 F. Supp. 2d at 1020 (citing cases). 11th Hour does not persuasively challenge the reasoning of the recent cases from this District.

11th Hour also argues that, because Hendrickson released any and all claims when she signed a "Personal Effects Inventory" upon retrieving her personal items from her vehicle after it was repossessed, she cannot assert claims against 11th Hour. This argument is foreclosed by *Cobb*. A valid release of claims must be supported by consideration. *See Cobb*, 295 N.W.2d at 237; *Sorensen v. Coast-to-Coast Stores (Cent. Org.), Inc.*, 353 N.W.2d 666, 670 (Minn. Ct. App. 1984). After a vehicle has been wrongfully repossessed, any resulting release of claims is "clearly without consideration" and is therefore void. *Cobb*, 295 N.W.2d at 237.

11th Hour's reasonable reliance argument also falls short. While asserting that it had the right to rely on representations by an agent of Fifth Third as to the legality of repossessing Hendrickson's vehicle, 11th Hour cites no legal authority in support of this

argument, and a review of case law produces none. Instead, the *Buzzell* court held, and this Court agrees, that "it is inconsistent with the broad remedial purposes of the FDCPA to allow a repossession company to escape liability . . . simply because it received a repossession order from a creditor, which it blindly followed without any assurance of the creditor's present right to possess." 802 F. Supp. 2d at 1023.

Finally, 11th Hour reiterates Fifth Third's arguments that, because Fifth Third was not required to send Hendrickson a *Cobb* notice, 11th Hour lawfully repossessed Hendrickson's vehicle. This argument fails for the reasons addressed in Part I of this Order. For the foregoing reasons addressed in Part II of this Order, 11th Hour's motion for judgment on the pleadings is denied.

### III. Fifth Third's Motion to Dismiss the Sampson Case

Fifth Third also moves to dismiss Sampson's complaint, arguing that because Sampson discharged her debt to Fifth Third in bankruptcy, Fifth Third had no obligation to send Sampson a *Cobb* notice.

Fifth Third maintains that it was entitled to repossess Sampson's vehicle under federal bankruptcy law, regardless of the holding in *Cobb*, because Sampson failed to redeem the value of her vehicle or reaffirm her debt with Fifth Third. But federal bankruptcy law does not grant Fifth Third a substantive right to repossess collateral. *See In re Dumont*, 581 F.3d 1104, 1114-15 (9th Cir. 2009) (holding that, even if federal bankruptcy law imposes no barrier to repossession, a creditor's substantive right to repossess collateral is a matter of substantive state law); *see also In re Steinhaus*, 349 B.R. 694, 710 (D. Idaho 2006) ("Creditors still must ensure that the contract, and their efforts to

9

enforce the terms in it, do not run afoul of any applicable state laws." (quoting *In re Donald*, 343 B.R. 524, 539 (E.D.N.C. 2006)). Fifth Third's obligation to comply with substantive state-law requirements before repossessing Sampson's vehicle, such as the obligation to provide a *Cobb* notice, does not depend on Sampson's compliance with federal bankruptcy law to reaffirm her debt.

Fifth Third argues that state law also imposes no obligation to send a debtor a *Cobb* notice before repossessing collateral after the debtor discharges her debt. *See Rodgers v. Gen. Elec. Capital Corp.*, 596 N.W.2d 671, 673 (Minn. Ct. App. 1999) (concluding that the creditor was no longer obligated to send a *Cobb* notice because the discharge of the plaintiff's debt "had the effect of voiding the installment contract" on the plaintiff's vehicle, and thus "no installment contract existed at the time of repossession and . . . [the plaintiff] was not entitled to notice"). The discharge of debt in bankruptcy extinguishes any justifiable reliance or expectation of the debtor that late payments could continue. *Id.* For this reason, in *Rodgers*, the creditor was not estopped from enforcing its security interest, as it was in *Cobb*. *Id.*

*Rodgers*' reasoning applies with equal force here. Sampson discharged her debt to Fifth Third in bankruptcy before Fifth Third repossessed her vehicle, and Sampson concedes that she did not reaffirm her debt. In circumstances when a debtor has discharged and not reaffirmed her debt, a creditor is not obligated to send a *Cobb* notice. *Id.* For this reason, Fifth Third is entitled to dismissal of Sampson's claims.[2]

---

[2] Sampson argues that, even if *she* were not entitled to a *Cobb* notice, her mother Lane, a co-signer to the loan agreement, was entitled to a *Cobb* notice. But *Cobb*'s holding

10

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Fifth Third Bank's motion for judgment on the pleadings in *Hendrickson v. Fifth Third Bank et al.*, Case No. 18-cv-0086, (Dkt. 87), is **DENIED**;

2. Defendant 11th Hour Recovery, Inc.'s motion for judgment on the pleadings or, in the alternative, summary judgment, in *Hendrickson v. Fifth Third Bank et al.*, Case No. 18-cv-0086, (Dkt. 92), is **DENIED**;

3. Defendant Fifth Third Bank's motion to dismiss in *Sampson et al. v. Fifth Third Bank*, Case No. 18-cv-1622, (Dkt. 7), is **GRANTED**; and

4. Plaintiffs Elizabeth A. Sampson and Tracey A. Lane's complaint in *Sampson et al. v. Fifth Third Bank*, Case No. 18-cv-1622, (Dkt. 1-1), is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: February 15, 2019

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge

---

is founded on a theory of justifiable reliance. *See Swift Cty. Bank v. United Farmers Elevators*, 366 N.W.2d 606, 609 (Minn. Ct. App. 1985) (holding that *Cobb*'s rationale does not apply to a party that "had no direct dealings" with the creditor). As Sampson's complaint does not allege that Lane had any "direct dealings" with Fifth Third, there is no ground for justifiable reliance based on a past course of dealing. *See id.*